UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CHARLES SCHULZ,

Plaintiff,

v.

COMMACK UNION FREE SCHOOL DISTRICT; and COMMACK UNION FREE SCHOOL DISTRICT BOARD OF EDUCATION,

Defendants.
--------------------------------------------------------------x

**MEMORANDUM AND ORDER**

21-CV-5646 (RPK) (ST)

RACHEL P. KOVNER, United States District Judge:

Plaintiff Charles Schulz, formerly a tenured administrator employed by the Commack Union Free School District (the "District"), brings this action alleging violations of the First and Fourteenth Amendments. Plaintiff principally alleges that defendants unlawfully abolished his tenured position and reassigned him to an untenured post because he opposed the District's decision to remove the book *Persepolis*, by Marjane Satrapi, from the high school English curriculum. Defendants moved to dismiss plaintiff's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, defendants' motion to dismiss is granted.

## BACKGROUND

Except where otherwise noted, the following facts are taken from the complaint and are assumed true for the purposes of this order.

In 2021, plaintiff was employed as the tenured Director of Secondary English, English as a New Language ("ENL"), and Library in the District. Compl. ¶ 25 (Dkt. #1). His responsibilities included managing the curriculum of the English Department. *Id.* ¶ 14.

Around June 7, 2021, Jordan Cox, the District's Executive Director of Instructional Service, informed plaintiff that the book *Persepolis* would no longer be part of the high school curriculum because of its "mature" content. *Id.* ¶ 13. Cox told plaintiff that the District would announce the decision at a town-hall event the next evening. *Ibid.*

Because "managing the curriculum of the English Department was part of his core duties," plaintiff "advised the panel that *Persepolis* provided value to students and should not be removed from the curriculum." *Id.* ¶ 14. Cox responded that the decision had already been made. *Ibid.* Plaintiff "accepted the District's decision," but stated "that he was not comfortable being the person to deliver this news" at the town hall because he knew the decision would be unpopular. *Id.* ¶¶ 15–16. The next day, Cox announced at a "tense and confrontational" town hall that *Persepolis* would no longer be taught. *Id.* ¶¶ 19–20.

On June 9, 2021, the Superintendent of the District told plaintiff "that his position was being eliminated" effective July 1, 2021, and that he would be moved to a newly created position of Associate Principal. *Id.* ¶¶ 21, 23. That new position is not tenured or part of the bargaining unit for the Commack Association of School Administrators. *Id.* ¶ 24. The Superintendent told plaintiff that the District "was going in 'a different direction,'" but did not otherwise explain the decision. *Id.* ¶¶ 26–27.

On June 11, 2021, plaintiff emailed Cox and the Superintendent of the District. *Id.* ¶ 31. Excluding salutations, the message states in its entirety, "I would like to meet today to discuss the events of this week. I am available aside from 12:30 to 1:30." Defendants' January 24, 2023

Letter 1 (Dkt. #16); Plaintiff's January 27, 2023 Letter 2 (Dkt. #17).[*] Neither the Superintendent nor Cox responded to the email. Compl. ¶¶ 31–32.

On June 17, 2021—about a week after plaintiff was told he was being moved to a new position—Newsday published an article about the removal of *Persepolis* from the high school curriculum. *Id.* ¶ 35. The article quoted Cox as stating that the Superintendent "made the decision months ago after consulting with a team of educators that included Cox, curriculum specialists, the director of English, the principal and a teacher." *Id.* ¶ 35. Immediately after that, it noted plaintiff's disapproval of the decision:

> Charles Schulz, who is listed on the district website as secondary school English director, said in an interview Thursday he had argued for keeping the book, which he viewed as a valuable resource. "We know how much the students respond to it, we know how much meaning they take from it, especially when it comes to learning about the world outside Commack and Long Island."
>
> *Ibid.*

On July 1, 2021, plaintiff's position change became effective. *Id.* ¶¶ 21, 45, 52. Plaintiff was advised that his new responsibilities would be monitoring home schooling and instruction, registering new entrants, managing state reporting, and assisting in site visits and observations. *Id.* ¶ 46. According to plaintiff, these duties "have historically and exclusively been performed by tenured administrative employees, including [his] abolished position." *Id.* ¶ 47. Plaintiff further alleges that while some of his former duties were reassigned to others, *id.* ¶¶ 66–69, "a preponderance of the duties" he "is responsible for" in his new position are the same as those he performed in his former position, *id.* ¶ 48. Plaintiff asserts the District "incurred higher expenses

[*] This email is properly considered in adjudicating this motion to dismiss because it is "incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court may "deem [email messages] . . . incorporated in the complaint" if plaintiff "referred in [the] complaint to" the messages, *id.* at 112, as plaintiff did here, Compl. ¶ 31.

and/or costs" as a result of the restructuring because of how it reallocated the responsibilities of plaintiff's abolished position. *Id.* ¶¶ 50, 63.

Plaintiff alleges that defendants' actions are part of a pattern of abolishing positions in order to circumvent tenure protections. *Id.* ¶¶ 56–85. For instance, plaintiff alleges that the District abolished an Assistant Principal position "without legitimate basis," assigned the Assistant Principal's duties to a new post, and offered the administrator who had held the abolished position yet another job—a new non-tenured position with a one-year contract. *Id.* ¶ 76.

In 2021, plaintiff filed this lawsuit raising five constitutional claims. First, plaintiff alleges that he was denied due process because defendants deprived him of his property interest in his tenured position without providing a pretermination hearing. *Id.* ¶¶ 86–109. Second, plaintiff alleges that defendants violated his Fourteenth Amendment rights by making stigmatizing statements regarding his involvement in the decision to stop teaching *Persepolis*. *Id.* ¶¶ 110–25. Third, plaintiff alleges that defendants violated his First Amendment rights by eliminating his tenured position based on his advocacy for *Persepolis* during a curriculum review panel meeting. *Id.* ¶¶ 126–54. Fourth, plaintiff alleges that defendants violated his rights under the Equal Protection Clause because they eliminated his position based on his exercise of constitutional rights. *Id.* ¶¶ 173–81. Finally, plaintiff alleges that defendants violated his substantive due process rights by eliminating his position. *Id.* ¶¶ 182–95.

Plaintiff alleges that defendants are liable for these constitutional violations under *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978), because the decision to eliminate his position was part of an unlawful municipal custom or policy and because the defendant Board is the final policymaker as to certain personnel decisions, including abolishing positions. Compl. ¶¶ 155–72. Plaintiff seeks damages, *id.* ¶¶ 196–205, and attorneys' fees, *id.*

¶¶ 206–08. Defendants have moved to dismiss all claims. Defs.' Mem. of Law in Supp. of Mot. to Dismiss 1 (Dkt #13-1) ("Mem. in Supp.").

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)) (internal quotation marks omitted). In contrast, a complaint fails to state a plausible claim when, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or when, as a matter of fact, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

When reviewing the complaint on a motion to dismiss, the court must accept all facts alleged in a complaint as true. *Iqbal*, 556 U.S. at 678. The court, however, is not obligated to adopt "mere conclusory statements" or "threadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Id*. at 678–79.

**DISCUSSION**

Defendants' motion to dismiss is granted. Plaintiff has adequately alleged that his reassignment was the product of a decision by a final policymaker for the municipality—namely, the Board of Education—as required for the municipal defendants to be held liable under *Monell* for any constitutional violation stemming from that reassignment. *See* Compl. ¶¶ 96–97, 159;

*Jones v. Bay Shore Union Free Sch. Dist.*, 170 F. Supp. 3d 420, 437–39 (E.D.N.Y. YEAR), *aff'd*, 666 F. App'x 92 (2d Cir. 2016); *Lopez v. E. Hampton Union Free Sch. Dist.*, No. 14-CV-1999 (ADS) (SIL), 2017 WL 2242874, at *9 (E.D.N.Y. May 20, 2017). But as explained below, plaintiff has not plausibly alleged any constitutional violation.

**I. Plaintiff Does Not Plausibly Allege a Procedural Due Process Violation.**

Plaintiff does not plausibly allege that defendants violated his due process rights by abolishing his tenured position without a pretermination hearing. To state a procedural due process claim, plaintiff must plausibly allege that he was deprived of a protected property interest without adequate process. *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Dwyer v. Regan*, 777 F.2d 825, 829–30 (2d Cir. 1985), *as modified by* 793 F.2d 457 (2d Cir. 1986).

Tenured civil servants in New York State have a property interest in their tenure protections, *see DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784, 789 (2d Cir. 1999)), but that interest is circumscribed. Under New York's tenure system, public employers are permitted to "abolish civil service positions for purposes of economy or efficiency" so long as the abolition is not "a subterfuge to avoid the statutory protection afforded to civil servants before they are discharged." *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996) (citations and quotation marks omitted); *see* New York Civil Service Law § 80.

As a result, when a tenured position is abolished, the employee who occupies it is not entitled to a pretermination hearing as a matter of course. *See Dwyer*, 777 F.2d at 833 (stating that "a state may well, from time to time, decide to make its operations more efficient by abolishing or consolidating positions" and that a state need not "routinely provide hearings for employees whose positions are targeted for elimination whenever the state adopts such efficiency measures");

*Broomer v. Huntington Union Free Sch. Dist.*, No. 12-CV-574 (DRH) (AKT), 2013 WL 4094924, at *4 (E.D.N.Y. Aug. 13, 2013) ("Courts . . . have held that due process does not require a pretermination hearing when a tenured teacher's position is abolished."), *aff'd,* 566 F. App'x 91 (2d Cir. 2014); *Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Co-op. Educ. Servs.*, No. 08-CV-367 (JTC), 2011 WL 4899991, at *11–12 (W.D.N.Y. Oct. 13, 2011) (tenured teacher "was not entitled to a hearing prior to [the] discontinuance of" her abolished position, but was instead entitled only to bring an action for post-termination review under Article 78 of New York's Civil Practice Law and Rules ("CPLR")), *aff'd,* 503 F. App'x 12 (2d Cir. 2012); *see also Mitchell v. Bd. of Ed. of Great Neck Pub. Sch.*, 357 N.E.2d 1008 (2d Dep't 1976). A public employer must, however, provide a pretermination hearing when it eliminates the tenured position of a single employee who, "via a request for a pretermination hearing, 'protests the notice of elimination of his position and contends that it is but a sham and pretext for the deprivation of his property right.'" *Tessler v. Paterson*, 451 F. App'x 30, 33 (2d Cir. 2011) (citation omitted); *see Cifarelli*, 93 F.3d at 50 (describing *Dwyer, supra,* as holding that "where [the] state terminates [a] single employee, due process requires [a] pretermination hearing upon [a] timely request of [the] employee objecting to termination on grounds of pretext").

Plaintiff's pleadings fall short because he has not plausibly alleged that he protested that the elimination of his position was a pretext and requested a hearing to challenge it. The communication that plaintiff alleges constitutes a request for such a hearing is a June 11, 2021 email message to the Superintendent and Cox. *See* Compl. ¶ 31. But that message—which is incorporated by reference into the complaint, *see n.**, *supra*—simply states that plaintiff "would like to meet today to discuss the events of this week" and provided his availability. Defs.' Letter 1. This highly general communication does not "contend[] that [plaintiff's reassignment was] but a

sham and pretext for the deprivation of his property right," *Tessler*, 451 F. App'x at 33, or put defendants on notice that he wanted a hearing to address that claim.

Consistent with the principle that a pretermination hearing is required only "upon timely request of [an] employee objecting to termination on grounds of pretext," *Cifarelli*, 93 F.3d at 50 (citing *Dwyer*, 777 F.2d at 833), this message did not trigger an obligation to conduct a pretermination hearing*, see Pulaski v. Stratford Bd of Educ.*, No. 04-CV-2015 (MRK), 2006 WL 2361724, at *5 (D. Conn. Aug. 15, 2006) (finding no pretermination hearing required, among other reasons, because plaintiff "did not claim that the elimination of her position for budgetary reasons was pretextual"); *Fehlhaber v. Bd. of Educ. of Utica City Sch. Dist.*, No. 09-CV-1380, 2012 WL 2571302, at *8 (N.D.N.Y. July 3, 2012) (finding that plaintiff did not informally request a pretermination hearing when the letters sent to the superintendent on his behalf "[n]either . . . sought a pretermination hearing or alleged that the proposed abolishment of the . . . position was merely a pretext to terminate plaintiff's employment"). Plaintiff was therefore only entitled to a post-termination hearing regarding his claim that the elimination of his position was a sham to circumvent tenure protections. *Pulaski*, 2006 WL 2361724 at *5 (noting that "when a state employee who has a protected property interest in her job fails to request a pretermination hearing, she is still entitled to a post-termination hearing").

Plaintiff hints at an alternative argument for opposing summary judgment in a footnote in his brief, where he invokes the principle that "a tenured employee is entitled to a pre-deprivation hearing" if "the employee's position is abolished, and the defendant employer contemporaneously created a similar position." Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss 10 n.2 (Dkt. #13-2) ("Mem. in Opp'n"). I decline to consider this alternative theory because arguments raised only in footnotes are forfeited. *See, e.g., In re Old Carco*, 809 F. App'x 36, 40 n.1 (2d Cir. 2020); *In re*

*Bernard L. Madoff Inv. Sec. LLC*, No. 22-CV-6561 (LGS), 2023 WL 395225, at *5 (S.D.N.Y. Jan. 25, 2023) (citing cases).

In any event, plaintiff does not appear to have set forth facts that would support this theory. New York law provides that, "[i]f the board of education abolishes an office or position and creates another office or position for the performance of duties similar to those performed in the office or position abolished, the person filling such office or position at the time of its abolishment shall be appointed to" the new post under most circumstances. N.Y. Educ. Law § 2510. As a result, several courts have recognized a right to a pretermination hearing when a tenured employee claims that a public employer terminated his employment instead of assigning him to a newly created, substantially similar position. *See, e.g., DeSimone v. Bd. of Educ., S. Huntington Union Free Sch. Dist.*, 612 F. Supp. 1568, 1570 (E.D.N.Y. 1985) (holding plaintiff had right to pretermination hearing because "plaintiff's old position and the newly created position were sufficiently similar that the Board knew or should have known that there was substantial *possibility* that plaintiff might possess a substantive right under Education Law [Section] 2510(1) to occupy the new position") (emphasis in original).

Here, though, plaintiff alleges that he *was* appointed to the newly created position with similar responsibilities to his former post. *See* Compl. ¶ 91 ("Defendants unilaterally abolished Schulz's tenured position and contemporaneously created a new non-tenured position, 'Associate Principal,' to which it assigned plaintiff"); *id.* ¶ 145 (same contention); *id.* ¶ 48 (alleging that in Schulz's new post "[a]s district-wide associate principal, a preponderance of the duties Schulz is responsible for are the same as those which Schulz held as Director of Secondary English, ENL and Library"); *see also* Mem. in Supp. 10 n.2. Since plaintiff has not plausibly alleged that he was denied the right to occupy a newly created, substantially similar position, his forfeited claim that

he was entitled to a hearing due to the creation of the new post appears to lack merit. *See DeSimone*, 604 F. Supp. at 1183 (explaining that the purpose of the pretermination hearing based on the similar responsibilities of a newly created post is to determine if employer denied defendant his right to "occupy [a] new equivalent position").

In sum, defendants are entitled to summary judgment on plaintiff's procedural due process claim, because plaintiff has not plausibly alleged he was entitled to a hearing on the elimination of his tenured position prior to his reassignment. On the facts as set out by plaintiff, the availability of a "post-deprivation Article 78 proceeding provided [plaintiff] with sufficient due process protections." *Tessler*, 451 F. App'x at 33.

## II. Plaintiff Fails to State a "Stigma Plus" Claim Under the Due Process Clause.

Plaintiff fails to plausibly allege that defendants violated his due process rights by making stigmatizing statements about him in the course of his dismissal from his tenured position. To demonstrate a deprivation of a property or liberty interest for purposes of a so-called "stigma-plus" claim, a plaintiff must allege that (1) the government made stigmatizing statements about him; (2) the statements were made public; and (3) "the stigmatizing statements were made concurrently with, or in close temporal proximity to, the plaintiff's dismissal from government employment." *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006).

Here, plaintiff has not plausibly alleged any stigmatizing statements. A stigmatizing statement is one that "call[s] into question [the] plaintiff's good name, reputation, honor, or integrity," or "denigrate[s] the employee's competence as a professional and impugn[s] the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession." *Id.* at 212 (citations and quotation marks omitted). "Not every derogatory statement made about an employee who loses his or her job" qualifies. *O'Neill v. City of Auburn*, 23 F.3d 685, 691 (2d Cir. 1994). For example,

a general statement that an employee was dismissed due to incompetence, along with statements that the employee "had 'poor relationships' with state agencies," and that his work was not "up to par" and was "sloppy," cannot give rise to a constitutional claim because those statements do not "go to the very heart of the employee's professional competence," and "threaten to damage his professional reputation, . . . significantly impeding his ability to practice his profession." *Id.* at 692–93 (internal citations and alterations omitted); *cf. Segal*, 459 F.3d at 209–10 (finding that teacher adequately alleged stigmatizing statements when employer accused plaintiff-teacher of condoning and encouraging fighting between schoolchildren); *Patterson v. City of Utica*, 370 F.3d 322, 331 (2d Cir. 2004) (same, where employee accused of taking kickbacks, embezzling, and dealing drugs); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 443–44(2d Cir. 1980) (same, where employee accused of mismanagement and embezzlement).

Plaintiff points to no stigmatizing statement that even arguably goes to the heart of his professional competence. He relies on a school official's statement to *Newsday* that the school superintendent decided to remove *Persepolis* from the high school English curriculum "after consulting with a team of educators that included Cox, curriculum specialists, the director of English, the principal and a teacher." Compl. ¶ 35. But the statement that plaintiff was among those consulted does not impugn plaintiff's reputation. As plaintiff's own complaint makes clear, weighing in on decisions relating to the English curriculum was among plaintiff's professional duties. *Id.* ¶ 29. And contrary to plaintiff's suggestion, the school official's representation that plaintiff was consulted on the *Persepolis* decision does not fairly imply that plaintiff endorsed it. Instead, the article's only statement regarding plaintiff's view on this book choice comes in the very next sentences, where it states in no uncertain terms that plaintiff opposed the removal. *Id.*

¶ 35. Because plaintiff has not plausibly alleged any stigmatizing statement by defendants, his stigma-plus claim is dismissed.

## III. Plaintiff Fails to Plausibly Allege a Violation of His First Amendment Rights.

Plaintiff has not stated a claim for First-Amendment retaliation. To state a First Amendment retaliation claim, plaintiff must plausibly allege that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that rights; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (citation omitted); *Williams v. Town of Greenburgh*, 535 F.3d 71, 76–77 (2d Cir. 2008). Plaintiff alleges that defendants violated that amendment by abolishing his position in retaliation for statements he made regarding the teaching of *Persepolis* to the English-curriculum review panel. Mem. in Opp'n 23–25. His claim is deficient because he fails to sufficiently allege that he engaged in protected speech or that his allegedly protected speech caused defendants' abolition of his position.

### A. Plaintiff Does Not Sufficiently Allege He Engaged In Protected Speech.

Plaintiff has failed to plausibly allege that the speech underlying his retaliation claim was constitutionally protected. The category of speech protected by the First Amendment is somewhat more limited for government employees than for others, because "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom" of speech. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). One limitation is that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421.

To determine whether speech is made pursuant to an employee's official duties, courts in this Circuit consider "whether a civilian analogue exists" and "whether the speech falls outside of

the employee's official responsibilities." *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 83 (2d Cir. 2022) (quotation marks and alterations omitted). The first inquiry is "of some help," but is not dispositive; instead, the key inquiry is "whether the speech at issue itself is ordinarily within the scope of an employee's duties." *Ibid.* (citation omitted). To make that assessment, "courts 'examine the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two,' along with other contextual factors such as whether the plaintiff's speech 'was also conveyed to the public.'" *Ibid.* (quoting *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012)). Speech "can be pursuant to" an employee's "'official job duties even though it is not required by, or included in, his job description, or in response to a request by an employer.'" *Ibid.* (quoting *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010)) (alterations omitted).

Plaintiff's comments regarding the inclusion of *Persepolis* in the English curriculum cannot form the basis of a retaliation claim under the First Amendment because they were pursuant to his official duties. As plaintiff explains, one of his core responsibilities as Director of Secondary English, ENL, and Library was "managing the curriculum of the English Department." Compl. ¶ 14. Thus, plaintiff notes, "it was part of [his] job duties to provide recommendations on matters relating to the District's curriculum required reading." *Id.* ¶ 29. It follows that when plaintiff told other administrators at a curriculum review panel "that *Persepolis* provided value to students and should not be removed from the curriculum," *id.* ¶ 14, he was performing his "job dut[y]" of "provid[ing] recommendations on" the District's "required reading," *id.* ¶ 29.

This conclusion is reinforced by the fact that plaintiff's remarks were directed "up the operational chain of command," *Castro v. Cty. of Nassau*, 739 F. Supp. 2d 153, 180 (E.D.N.Y. 2010), to the District's Executive Director of Instructional Service, Compl. ¶¶ 10, 13. "Ordinarily, employees who make recommendations to their supervisors on subjects directly related to their

jobs are carrying out their official duties and thus receive no First Amendment protection." *Thompson v. District of Columbia*, 530 F.3d 914, 916 (D.C. Cir. 2008). It is reinforced, too, by the fact that plaintiff made his remarks in a non-public "review panel" meeting, Compl. ¶¶ 10, 13, "a channel for which the Complaint does not suggest any public analogue," *Ahmad v. New York City Health & Hosps. Corp.*, No. 20-CV-675 (PAE), 2021 WL 1225875, at *32 (S.D.N.Y. Mar. 31, 2021).

And it aligns with the conclusions of other courts in this Circuit in similar cases. *See, e.g.*, *Woodlock v. Orange Ulster B.O.C.E.S.*, 281 F. App'x 66, 68 (2d Cir. 2008) (finding that a counselor's complaint about "lack of physical education and art classes . . . [was] made pursuant to her 'official duties' as a special education counselor") (citing *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008)); *Forman v. New York City Dep't of Educ.*, No. 19-CV-8156 (JPC), 2022 WL 912130, at *8–9 (S.D.N.Y. Mar. 29, 2022) (finding plaintiff's complaints about "various pedagogic and personnel matters" to be within his duties as a public-school teacher); *Ehrlich v. Dep't of Educ. of City of New York*, No. 11-CV-4114 (RMB) (KNF), 2012 WL 424991, at *3 (S.D.N.Y. Feb. 6, 2012) ("[C]ourts have routinely held as a matter of law that a teacher's advocacy on behalf of her students falls squarely within her official duties as a teacher.") (collecting cases).

Plaintiff argues to the contrary based principally on a short footnote in a pre-*Garcetti* appellate decision stating that an athletic director's statements about a hazing incident—initially conveyed to school district officials but then relayed publicly at a press conference—were "not made strictly pursuant to his duties as a public employee." *Cioffi v. Averill Park Central School Dist.*, 444 F. 3d 158, 166–67 n.3 (2d Cir. 2006). But that case was decided without the benefit of the Supreme Court's guidance in *Garcetti* on when speech is pursuant to an employee's job responsibilities. And because the Second Circuit's discussion of that question in *Cioffi* is limited

to two sentences in a footnote, it is not clear whether the test being applied in that case mirrors the one the Supreme Court ultimately adopted, and whether the Second Circuit in that case would have reached the same result after *Garcetti* were decided. *See Morey v. Somers Cent. Sch. Dist.*, No. 06-CV-1877 (PGG), 2010 WL 1047622, at *7 (S.D.N.Y. Mar. 19, 2010), *aff'd,* 410 F. App'x 398 (2d Cir. 2011). In any event, *Cioffi* is not on point because it involved publicly disclosed statements "outside the ordinary chain of command," *Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 345, 349–50 (6th Cir. 2010), rather than speech to other school administrators within the school-administrator forum, *see Weintraub,* 593 F.3d at 204 (distinguishing *Cioffi*); *see also Morey*, 2010 WL 1047622, at *7.

A different result is not warranted because plaintiff was engaged in "speech relating to the classroom." Mem. in Opp'n 23–25. The *Garcetti* majority responded to a dissenting Justice's statement that he "hope[d] that today's majority does not mean to imperil First Amendment protection of academic freedom in public colleges and universities," *Garcetti*, 547 U.S. at 438 (Souter, J., dissenting), by stating that it "need not . . . decide whether the analysis we conduct today would apply in the same manner in a case relating to scholarship and teaching," *id.* at 425. The Second Circuit has likewise reserved judgment on that question. *Panse v. Eastwood*, 303 F. App'x 933, 934–35 (2d Cir. 2008); *see Lee-Walker v. New York City Dep't of Educ.*, 712 F. App'x 43, 44–45 (2d Cir. 2017) (citation omitted). But while the status of certain academic speech under *Garcetti* may remain an open question, courts in this Circuit have not treated high school teachers' curricular complaints, within their chain of command, as falling outside *Garcetti*. *See Woodlock*, 281 F. App'x at 68 (applying *Garcetti* to a First Amendment claim based on teacher's complaints about "lack of physical education and art classes"); *Nadolecki v. William Floyd Union Free Sch. District*, No. 15-CV-2915 (JMA) (AYS), 2016 WL 4768823, at *6–7 (E.D.N.Y. July 6, 2016)

(applying *Garcetti* to teacher's statements regarding "the adequacy of the curriculum"), *report and recommendation adopted*, 2016 WL 4766268 (E.D.N.Y. Sept. 13, 2016); *see also Adams v. New York State Educ. Dep't*, 752 F. Supp. 2d 420, 463 (S.D.N.Y. 2010) (similar), *aff'd sub nom. Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir. 2012); *Picinich v. New York Dep't of Educ.*, No. 16-CV-844 (CBA) (LB), 2016 WL 11265651, at *7 (E.D.N.Y. Oct. 14, 2016) (similar), *report and recommendation adopted*, 2017 WL 1079976 (E.D.N.Y. Mar. 22, 2017); *Arroyo v. Dep't of Educ. of City of New York*, No. 19-CV-7416 (ER), 2021 WL 4267593, at *6 (S.D.N.Y. Sept. 20, 2021) (similar). Since plaintiff's "internal complaint[] to [his supervisors], about subjects . . . within [his] responsibilities," *Adams*, 752 F. Supp. 2d at 463, is properly analyzed under *Garcetti*, plaintiff has not stated a First Amendment claim.

**B. Plaintiff Also Fails To Sufficiently Allege Defendants Were Aware Of His Protected Speech.**

Plaintiff has also failed to plead a First Amendment claim because he has not alleged facts demonstrating that "it is at least plausible that [defendants were] aware of" his protected speech "and that [his position's abolition] was motivated by" that speech. *Odermatt v. New York City Dep't of Educ.*, 694 F. App'x 842, 845 (2d Cir. 2017). Plaintiff alleges that he made his *Persepolis* comment to a curriculum-review panel composed of only school-level employees on June 7, 2021. Compl. ¶ 13. He does not allege that any of those present communicated plaintiff's comment at that meeting to any policy-making official, such as the District's Superintendent, involved in the decision to eliminate plaintiff's tenured post.

Plaintiff principally asserts that such knowledge can be inferred because plaintiff was told his position was being eliminated two days after the curriculum-review panel meeting, Compl. ¶¶ 10, 21, arguing that "temporal proximity alone satisfies the pleading requirement for causation," Mem. in Opp'n 22. But while factfinders can infer a causal connection from the temporal

proximity of protected speech to a challenged employment action, *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009), that inference is only permissible if there is reason to believe that the decisionmakers taking the allegedly retaliatory action were aware of the plaintiff's protected speech. Thus, in *Goord*, the Court of Appeals found that defendants were not entitled to summary judgment only after finding a basis for the inference that the correction-officer defendants knew the plaintiff had engaged in the First Amendment protected conduct at issue—filing a lawsuit—including because one of the correction-officer defendants was a named defendant in that lawsuit. *Ibid*. District courts in this Circuit have accordingly not allowed First-Amendment retaliation claims to go forward without a factual basis for inferring that the alleged retaliators had knowledge of a plaintiff's protected speech. *See, e.g., 41 N. 73 W., Inc. v. Cnty. of Westchester*, No. 08-CV-4523 (CS), 2009 WL 10740050, at *10 (S.D.N.Y. Sept. 29, 2009) (dismissing a First Amendment retaliation claim because, among other reasons, plaintiff failed "to state with any specificity [when, where, how, or which defendants] were informed" of the allegedly protected activity); *Knight v. Nassau Cnty.*, No. 17-CV-0958 (SFJ) (SIL), 2020 WL 4207439, at *12 (E.D.N.Y. July 22, 2020), *aff'd*, 852 F. App'x 42 (2d Cir. 2021) (similar); *Benedith v. Malverne Union Free Sch. Dist.*, 38 F Supp. 3d 286, 322–23 (E.D.N.Y. 2014) (similar); *Brady v. Cnty. of Suffolk*, 657 F. Supp. 2d 331, 356 (E.D.N.Y. 2009) (similar). Plaintiff has not alleged such a basis. Plaintiff's claim under the First Amendment is therefore dismissed.

## IV. Plaintiff Fails to State an Equal Protection Claim.

Plaintiff has not plausibly alleged that defendants violated the Equal Protection Clause "by improperly abolish[ing] Schulz's tenured position and reassign[ing] him to a non-tenured position" in retaliation for his "advocating for the protection and inclusion of [*Persepolis*] on the District's high school required reading list," Compl. ¶ 175, as part of a pattern of actions against school administrators for their opposition to defendants' policies, *id.* ¶ 179; *see* Mem. in Opp'n 24

(describing equal protection claim as one based in disparate treatment of "administrators who . . . performed their respective duties in the pursuit of open discourse, academic freedom, and academic integrity").

As plaintiff observes, a defendant may violate the Equal Protection Clause by alleging selective treatment "motivated by an intention to . . . punish or inhibit the exercise of constitutional rights." Mem. in Opp'n 24 (quoting *Hu v. City of New York*, 927 F.3d 81 (2d Cir. 2019)). Here, though, the only constitutional right that plaintiff has alleged defendants sought to punish or inhibit through their retaliatory acts is a First Amendment right. When a plaintiff is "attempting to assert an equal protection claim based upon retaliation for First Amendment activity . . . such a claim is completely duplicative of the First Amendment retaliation claim and, therefore, should not go forward." *Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 518 (E.D.N.Y. 2011) (citation omitted) (collecting cases); *see Best Payphones, Inc. v. Dobrin*, 410 F. Supp. 3d 457, 484 (E.D.N.Y. 2019) (same); *see also Gentile v. Nulty*, 769 F. Supp. 2d 573, 583 (S.D.N.Y. 2011) (noting that "where plaintiff's First Amendment claims have already been dismissed, and plaintiff's equal protection claims are based on alleged retaliation for the exercise of his First Amendment rights, the two claims coalesce").

Accordingly, plaintiff's equal protection claim is dismissed.

## V. Plaintiff Fails to State a Substantive Due Process Violation.

Finally, plaintiff asserts a generalized substantive due process violation. Mem. in Opp'n 24–25. "[W]here a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a [Section] 1983 suit cannot make reference to the broad notion of substantive due process." *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005) (citing *Kia P. v. McIntyre*, 235 F.3d 749, 757–58 (2d Cir. 2000)). Because plaintiff's "substantive due process claim is predicated on the same factual allegations as [his] separate claim[s] based on

[other] source[s] of constitutional protection"—the First Amendment, Due Process, and Equal Protection Clauses—"[his] substantive due process claim must be dismissed." *Z.F.X. by Vankesteren v. Riverhead Cent. Sch. Dist.*, No. 20-CV-962 (GRB) (ST), 2021 WL 1238842, at *4 (E.D.N.Y. Apr. 2, 2021) (compiling authority).

**CONCLUSION**

The complaint is dismissed for failure to state a claim. Plaintiff may file a motion seeking leave to file an amended complaint within thirty days. Any such motion should include the proposed amended complaint correcting the deficiencies identified in this Memorandum and Order as an exhibit, and explain why leave to amend should be granted. All proceedings in this case are stayed for thirty days. If plaintiff fails to file a motion to amend within thirty days, the case will be dismissed.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: March 28, 2023
Brooklyn, New York